Good morning, may it please the court. I represent the appellants, the Yau plaintiffs in this putative class action that was dismissed, on a motion to dismiss and without leave to amend a proposed amended pleading in this case. Are you Ms. Albert? Yes, ma'am. By October 9, 2009, one in eight mortgages in the United States was already in default or in foreclosure. 1.2 million homes were repossessed in 2010, 900,000 in 2009, and it's gotten only worse. The projections are we are still going to be in this foreclosure crisis until 2018. In response, the federal government created the Making Home Affordable Program, which was enacted in March of 2009. This case was filed in January of 2011 against Aurora Loan Services for failure to abide with the terms, the policy, and the guidelines for which it received $2.873 billion in taxpayer funds in order to implement this program, in order to save millions of homes from foreclosure. This is now what is termed and now commonly known as a dual tracking case. And at the time this case was filed, probably no one ever heard of that term, or it was barely even known. Now it is commonly known, and in California they passed, as of January 1, 2013, the Homeowner Bill of Rights, which is HPLR. Prior to that time, homeowners were being dual tracked, which means they were going into foreclosure, and only once they were in foreclosure were they allowed to apply for a home modification program plan. Under that plan they received what was called a TPP, which is a temporary payment plan. The way the government had created it to work was that you would receive a plan with three payments, which would be based on 31 percent or less of your gross monthly income. By the time that third payment was received, you should have received a permanent modification, so long as they verified that your income was correct. I guess I'm trying to figure out what's before us now, and the temporary payment plan breach of contract theory is not even before us right now. I'm kind of puzzled by what has happened procedurally here. This case is styled YOW, but Mr. YOW is not even properly on the appeal. Why is that? This case, the appeal, the notice of appeal was amended prior to briefing to include Mr. YOW. There were several... Why wasn't he included in the first place? It was an oversight, and so then when briefing started... I'm just looking at what's happened here that's rather stunning in light of the procedural history here. This case was first brought with a number, almost a dozen, if not more, allegations. I won't call them actual claims because it's not clear exactly what some of them were, but it was dismissed because Aurora moved for dismissal, and you didn't oppose it. You were, by the grace of the district court, given an opportunity to amend, and that's when you filed the first amended complaint that included a number of other claims, and the court, it appears, granted the dismissal basically for failure to state a claim on a number of these, with leave to replete most of the counts, and only two were dismissed with prejudice. When you refiled in the second amended complaint, you sought and attempted to add a number of new claims that were not part of the first or the first amended complaint. The district court appears to have dismissed those, saying you need to seek permission to file some of these again, and then dismissed many of these as well for substantive reasons, and now there's a third amended complaint, and in the third amended complaint, the only thing that you filed, you didn't file or seek to add new claims of the second amended complaint, except for in the third amended complaint where you filed a breach of contracts theory based on the trustee theory. That's the only thing. That was denied. That's the only thing that's been appealed, and from what I can tell, the only other thing that might survive is whether or not the district court properly dismissed the negligence. Help me understand what happened procedurally here. Okay. Procedurally here, we received a stipulation with regard to TRO at the beginning of this case because it was a dual tracking case, and we were seeking a preliminary injunction. The way the stipulation read, we had to actually give notice. So we were coming into the court with a series of TROs. We had stopped 1,500 homes in that small timeframe from going to sale. So this was an extremely active case. The court was seeing more issues regarding stopping immediate and imminent foreclosures than dealing with the actual pleading procedures, and, yes, things would happen where deadlines were missed. If you look at there, it was one day late when the order came down with regard to granting the motion to dismiss for failure to file the opposition. There was only a 24-hour period. If you look at the actual docket, you will see that there are a lot of entries because there was a lot of activity, because this wasn't about just trying to get class damages. It was trying to preserve and sustain home ownership. I'm curious. How often do you practice in Federal court? I do practice a fair amount, yes. And I understand the rules, and I'm very thankful that Judge Selma gave us the opportunities that he gave us procedurally. And if you notice, he saw that there was some merit here because he did grant a partial preliminary injunction in this case, at least waiting until claims were modified. What happened was that there was a lot of activity. Why didn't you state a negligence claim? You had already stated it. You just needed to ask for permission. We didn't file the motion for leave to amend to add the negligence claim. We didn't do it between the second and third. That was when the preliminary injunction came out, and we were making an emergency appeal. I know, but the state of the record in front of us, I agree with Judge Murguia. It's really hard to follow and to understand. I'm not even sure what claim is in front of us at this point. Well, I'm going to ask you. Actually, I'm going to go back to something else. Okay. I don't know. When did you file your request to amend the notice of appeal to include YOW? And was that within the same 10-day period you have to file the notice of appeal, or was it out of time? It was out of time. But then you're not allowed to do that. What law lets you do that? There is a case law that says when you have a class rep, you can substitute in and out class reps, or you can all of the people that are named as appellants are named as class reps. So you can swap names in and out. It does not expand jurisdiction. And that is in this case. The jurisdiction isn't being expanded at all. When the actual briefing was being prepared, looking at the record, although we did have the series of TROs, the complete TPP plan was under Mr. YOW. So at that point in time, although Mr. YOW's name was the first, he wasn't listed in the actual notice. We took some A's and B's. So you had Apostolos, Brown, Burke. What bothers me really mostly is I sense that there is a legitimate claim out there, but you have not made it. Well, that's a shame. I mean, because there's law. Yes, it is. Yes, it is a shame. If that's the case, it is a shame. I'm just perplexed by what has happened here and the inability to bring a claim and preserve it. There's only one, possibly two, in front of us right now, and I'll bet you don't even know which two that is.  No. Or they say the breach of deed of trust, which would be the last surviving claim, because that was the last. Well, I'm not buying into anything. I've poured over this record trying to figure out and make sense of what happened here, and I can't. I'm going to give you opportunity to argue whatever you think you can at this point. I think the only thing that's probably before us is the appeal of the breach of contract based on this trust deed theory that the court denied, and you are appealing that. The only other thing that might be in front of us is whether or not you can still bring the negligence claim at this point. Under the breach of deed of trust, what had occurred was the court refused breach of a TPP agreement on the basis that he found there was no private right of action under hand, and he allowed us to state one claim and one claim only, and that would be under the breach of deed of trust. So we made the claim of the breach of deed of trust. The court found that Aurora Loan Services wasn't a party to the deed of trust, although there was a series of assignments of deed of trust that were assigning these deeds of trust to Aurora. Under every deed of trust in California, there's a power of sale clause and to non-judicially foreclose. There is an implied covenant within that that you are going to actually follow California law when you do initiate or conclude a foreclosure. Here, by failing to follow those TPP agreements, which California law was required that you do your non-judicial foreclosure process properly, and that is Jolly, and that would be the West case that just came out, who have affirmed that every contract must be read lawfully, which includes following HAMP. That would be a breach of the deed of trust because as a conditioned precedent, you must have followed those rules. Here, they did not. They didn't even follow the foreclosure rule of 2923.5, which is giving a meaningful opportunity to avoid foreclosure at least 30 days prior to recording your notice of default, which had existed since 2008. That's the breach of deed of trust. It's just another way of going to a breach of a TPP plan, which we've always had here. Unfortunately, the court just never viewed it that way. Then why didn't you bring it again as the breach of the TPP plan? Instead, you called it the trust deed theory, and it looks like, and I think the district court properly recognized, that it looks like some sort of way to bring up another form of one of these that you had brought forth previously, and that, I'm trying to find it here, a breach of good faith and fair dealing. It looks like that's what you're trying to bring in this breach of trust theory, and it looks like that's what the district court recognized. Isn't that right? Well, the court did recognize that. The problem is that the court had already dismissed without leave to amend with regard to the breach of the TPP. Claims that were already dismissed without leave to amend weren't brought again. Under Ninth Circuit law, that's an interlocutory order. We couldn't appeal those little decisions on the partial motions to dismiss without leave to amend until the whole case was dismissed. We could have voluntarily dismissed after the first complaint and brought it up to the Ninth Circuit, but we wanted to try. I wanted to try. I wanted to see what we could get through, if anything, to the court. A motion for leave to amend was properly made. That was denied when the third, and it was not denied on technical grounds. It was denied because the court found it would be futile. The court said it would be futile to plead negligence. Now this court has the Jolly case, which is a published case  And, yes, when you're looking at these breach of TPP agreements, that is negligence because this does cause emotional distress to families. Kennedy, you formulate why is a negligence claim before us? It should be before this Court because the court below denied our leave to amend to add that claim. That's how it's probably been. And did you appeal that? Yes, and it is in the notice of appeal on the very first page. The very first page of the notice of appeal says we are appealing the motion to dismiss along with the motion for leave to amend. And both docket numbers are actually on the very first page of the notice to appeal. So it is properly before this Court. And it appears that when you read, I see I only have 20 seconds left. Procedurally, it looks like it's a muck because we are trying to save homes. The district court saw it a lot clearer because it was a very active docket. And there was a lot of guidance given at those TRO hearings in addition to the motion to dismiss hearings. And the docket is a very, this is over 1,000 pages, our excerpt of record in this case. We had very solid statistics here. There's a lot of homeowners in this case. It wasn't anything theoretical. If you look at the Chow case, if you look at their complaint, their complaint was not, didn't fare any better than our original complaint that went out, but yet the Northern District of California denied that motion to dismiss. And ours was granted. And ours was based on a TPP, which is even more solid than a forbearance plan. I'll reserve my. You don't have any time left, but I'll give you a minute for rebuttal if you need it. Thank you. Good morning, Your Honors. May it please the court. My name is Victoria Edwards, counsel from Aikerman Centerfit, LLP, representing Apelli Aurora Loan Services in this appeal. Your Honors, plaintiffs seem to suggest that the mock-up procedurally that happened below in the district court is a result of their strong attempt to try to stop foreclosures. Aurora Loan Services understands this plight and can confirm that the reason why so many thousands of sales were postponed initially in the lawsuit below was because Aurora voluntarily stipulated with plaintiffs to postpone certain sales so that Aurora could look at those plans for loan modifications. Counsel, you can stand in the middle, and both microphones will pick up your voice, and you can just speak directly to us. You don't have to. I apologize. I soft-spoken, so I just wanted to make sure. I am, too, but it's, yeah. Aurora agrees with plaintiffs that there has been problems with foreclosures recently, and homeowners are struggling. But Aurora is understanding of that plight and has worked with the borrowers throughout this litigation to help save homes. As but a few examples, Mr. Eddie Yao actually received a loan modification in this case. Angela Brown actually received two modification offers, both of which she declined. So the issue of homeownership and the struggling of plaintiffs to try to save those homes cannot make up for the procedural errors that the court has very clearly indicated here today. We'll start with the procedural issues that ---- Well, can I just ask you, what do you think is in front, which claims are in front of us on appeal? The only claim in front of us is the breach of the deed of trust claim, which is the last claim that was put forth in the third amended complaint below. Do you disagree that the denial of the leave to amend to add the negligence claim on the basis that it would be futile is before us? Because I just looked at the notice of appeal, and they did raise that in their notice of appeal. While they did raise it in the notice of appeal, it's not one of the key issues that was presented in the papers for review. It is mentioned in passing, but there is case law that suggests that it's just in passing reference to an argument. It's not going to preserve an argument for appeal. There really is not a lot of argument in the opening brief that suggests that that issue was preserved for appeal. And if it was preserved for appeal, it's Aurora's position that the court below did not abuse its discretion in denying leave for amend. Plaintiff's counsel won't argue here that the facts of this case have remained consistent throughout 2009 when most of these bars claim they receive a temporary payment plan. The only thing that's changed here is that time has passed, and plaintiff's counsel has had time to try to reevaluate the claim and to make new theories based on the facts that have been before the court for quite some time. Well, assuming that we take up the negligence, what's your argument against it? Plaintiff's counsel has indicated there's new case law, the Jolly case, that suggests that there is a growing duty on behalf of the lenders and servicers to reasonably look at borrowers for loan modifications and that a reviewable loan modification is, in fact, a step outside the traditional lender-servicer role. That's, in fact, contradicted by other case law that's currently out there. The Raglan case in particular, which is 209 Cal App 4182. What's the name of that case? Raglan, R-A-G-L-A-N-D as in dog. Is that in your brief? It is not in the brief. But that case in particular dealt with some loan modification issues and in particular dealt with a situation where a representative of the bank had indicated to the borrower that they didn't have to make a payment in order to qualify for a loan modification. And the court in that case found that even though that was a representation made by the servicer, that did not take that duty to modify loans or service outside the role of the traditional lender or servicer. As to the procedural issues. Oh, there's a conflict of California law. That's correct, Your Honor. Putting aside the procedural deficiencies, which this court has already indicated it is aware of, and going to the merits of the only claim that's before us, the breach of contract claim for the deed of trust, the district court probably found that that was not a surviving claim because Aurora Loan Services was not part of a deed of trust. It's very clear that it wasn't. Plaintiff's counsel does mention assignments here, but the assignments do not make the loan servicer part of the deed of trust. The only purpose of the assignment in most cases is to take the loan out of the name of MERS in order to complete the foreclosure sale. In fact, an assignment of deed of trust is not even necessary in California to initiate the nonjudicial foreclosure process. But it is a form of habit that the servicers do file these assignments in order to take many of these loans out of the name of MERS. The district court also found that the claim failed because the theory which plaintiffs espouse, which is there's an implied duty of good faith and fair dealing in a deed of trust, wasn't valid because the implied duty that they were trying to make into the deed of trust, i.e., a servicer has an obligation to reasonably consider borrowers for loan modifications, would go against the express terms of the deed of trust. Which provide the lender with many, many rights, one of which is to pursue foreclosure and complete foreclosure regardless of whether or not it receives partial payments on a loan. And to suggest that there's some implied duty not to foreclose would be directly contradict those express terms. Now plaintiff's counsel does mention these two new cases, the West case out of the California Court of Appeal and the Jolly case. But those cases are distinguishable here. The biggest reason, they didn't deal with a breach of a deed of trust. They dealt with a breach of a temporary payment plan. That issue has recently come to head in the West case, but it's not before this court based on the facts of this case. In this case, the borrowers qualified for a type of temporary payment plan that was different from the ones in the West case. And in the West case, there were additional promises made to the borrowers, which would have confirmed to them that they had qualified for a loan modification. The facts of this case do not support the facts espoused in West. As to the negligence claim, it's our position that that claim is not before the court, as previously indicated, because that was not part of the last operable complaint below. The unfortunate reality here is that despite Aurora's many efforts to try to modify borrowers' loans, in this case, they didn't qualify. And although there's much litigation that has ensued by servicers who have allegedly failed to modify loans, the law in California is still the case that there is no private right of action under HAMP, that there's no obligation under state law to modify a loan, and that would be Civil Code 2923.6. What is the state of the home's been foreclosed on, or are they still subject to? My understanding is that two of the properties have been foreclosed on out of the five before the court, and Plans Council might have different information, but that's my information to date. As I said before, Eddie Yao actually got a loan modification, and is currently in his home. Angela Brown received two offers for loan modifications, declined both, and recently filed the injunction papers before this court earlier or late last year. And I think the two that have been foreclosed on might have been Stephen Burke and Richard Apostolos. Joanne Anderson, I believe, was in bankruptcy for quite some time. I'm not sure if she's still in bankruptcy or she was in Chapter 13. But just to wrap up here, the law here currently in California is that there's no obligation to modify the borrower's loan. The HAMP directives don't make it mandatory. As previously suggested, Civil Code 2923.6 doesn't require it, and there's still no private right of action under HAMP. While the West case does try to take it a step further in California and indicate that there is a breach of contract claim that can derive from a temporary payment plan, the facts of those cases were very different from the facts of this case, and this case would not be ripe or provide for the court to make a decision on that issue at the federal level. I just want to follow up on what Judge Wardlaw has. Do we have the five individuals in front of us? I'm presuming that Eddie Al is still part of it. There was a pending motion to dismiss that I think was taken off. So if the negligence claim is allowed to survive, who is affected by that? It would be our position that if the negligence claim was to survive, that Eddie Al would not be part of that. It would be the four, Joanna Anderson, Stephen Burke, Richard Apostolos, and Angela Brown. The two have been foreclosed on. Yes. Would they still be eligible? I don't think the negligence claim would be dependent on whether or not the foreclosure was completed, if that was where the court was going. Unless the court has any further questions, I'll rest. Thank you. Thank you. Do you want a minute? Can you articulate exactly what your negligence claim is? Yes. The negligence claim was based on the failure to modify within a reasonable amount of time. If the defendant's conduct had actually not dual-tracted and delayed, they wouldn't have caused all the distress and the inability to cure the default. This causes family strife. It causes severe emotional distress facing a foreclosure. It causes depression. Anything else that you can think of that would actually tear a family apart because you're losing your home and you're facing the foreclosure and the loss of your home. So what did they do that was negligent? They failed to process the loan modifications within a reasonable amount of time. Under the TPP plan, you are supposed to process that modification within three months. So when you are making your last payment under that temporary payment plan, you have an actual permanent modification in front of you. This stops the rolling arrearages that are occurring in these plans. These loans are ballooning in the process because they're only getting partial payments that are being applied to their loan. In this case, they're going to suspense funds, so they're not getting applied at all. These negative amortization loans are now even getting larger. The person's debt is getting insurmountable. They have no other way now to avoid foreclosure. So then what did Aurora do? They offered them another plan. They drug it out longer. They made it so large that basically you were gambling with your home. You were playing Russian roulette. Do I pay them and hope that they don't foreclose at the sale date for this next month and maybe I'll be in my home one month longer? Maybe I'll get a plan. Or do I take that money and go get a hotel room or try to move my family out? A lot of these families were sitting there living in barren homes for a long period of time because they didn't want to lose everything. So they bought little storage units and moved half of their stuff out, had half of their stuff there, maybe kept the cable TV on so the kids didn't understand what was going on. It was a horrible situation. How long did the process go on? The process went on for some of them up to two years. Two years? Yes. You're arguing it should have been three months. It should have been three months. That's what it should have been under the program. Could they say they were giving them a break and giving them two years? Well, the defendant's position is, well, what we were doing was we were allowing them to stay in their homes during this time. But they weren't looking to rent their home for a couple of years. They were looking to save their home. And what happened, like in Mr. Yao's case, all of a sudden his loan is coming up to $727,000. The program stops at $729,000 because it keeps on adding, the negative amortization keeps on building up the principal. So it was harming them. It was harming them. I think what also harmed them is that it's taken four times for you to plead this particular claim, and even then it's on appeal whether or not it can go back. That's unfortunate. And I tried my best. I tried my best. There wasn't, this case, when it started out, there was class action counsel from New York that was supposed to be on it. But they left the case right at the beginning because they were afraid of the Chao case up in Northern District of California, truth be told. So I was left with trying to run the case myself. And I had to gear up an office. We had 200 phone calls a day coming into my office when this case started. It was, the actual injury that's out there in this case is a lot more palpable than maybe you would see in some of these other cases. Some of the other firms in the U.S. were not getting hit like my firm was, and we did our best. We tried to do what no other class action law firm tried to do at the time. We actually tried to save homes. There wasn't another law firm out there in the U.S. that, they took these cases, but they didn't try to save homes. They said, go find local counsel. We're not going to try to help stop what's really going on in the U.S. And I tried my best. We tried our best. We worked on this 24-7. An opposing counsel can even say their firm even worked on it 24-7. Sometimes we had e-mails going back and forth at midnight. So we tried to work out a process. What's the name of your firm? It's not listed here. Law Offices of Leonore Albert. Very small. They had to gear up very quickly. And I think that even Judge Selma would agree that. We worked to coordinate things as things were happening. And we actually were finding a system. We were finding a system. It's just that the precedent wasn't there yet. Although you could see things were wrong, and we were arguing theories, and we were arguing policies. And you can say the precedent was there. Biaconda Factor has been there for years and decades and ages. But it just wasn't being employed for some reason in the courts. For some reason, everyone decided to forget that. Or Connor v. Great Western, the California Supreme Court case, with regard to literally loans with banks. The Raglan case. The Raglan case is easily distinguishable. It isn't conflicting law. The Raglan case, they only allege property loss. They said there was no emotional distress. There was no strife. Counsel, you're well over your time. So thank you very much for your argument today. I think both counsels shed some light on this case for us. So thank you very much. And yeah, versus Aurora Loan Services will be submitted.
judges: Noonan, Wardlaw, Murguia